## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

_____

DAVID BISACCA                          :
3526 Cherry Street                     :
West Mifflin, PA 15122                 :        CIVIL ACTION
                                       :
            Plaintiff,                 :        No.:  2:21-cv-333
                                       :
      v.                               :        **JURY TRIAL DEMANDED**
                                       :
JMP LOGISTICS, INC.                    :
3047 White Pine Drive                  :
Gibsonia, PA 15044                     :
            and                        :
AMAZON LOGISTICS, INC.                 :
202 Westlake Avenue, North             :
Seattle, WA 98108                      :
                                       :
            Defendants.                :
_____:

## CIVIL ACTION COMPLAINT

David Bisacca (hereinafter referred to as "Plaintiff," unless indicated otherwise) by and through his undersigned counsel, hereby avers as follows:

## INTRODUCTION

1.      Plaintiff has initiated this action to redress violations by JMP Logistics, Inc. and Amazon Logistics, Inc. (hereinafter collectively referred to as "Defendants," unless indicated otherwise) of the Americans with Disabilities Act, as amended ("ADA" - 42 U.S.C. §§ 12101 *et. seq.*), the Pennsylvania Human Relations Act ("PHRA"),[1] the Pennsylvania Medical Marijuana Act ("MMA"), 35 P.S. §§ 10231.101, *et seq.*, and Pennsylvania common law.  As a direct consequence of Defendants' unlawful actions, Plaintiff seeks damages as set forth herein.

---

[1] Plaintiff's claims under the PHRA are included for notice purposes only. Plaintiff intends to amend his instant lawsuit to include such claims (which will mirror his ADA claims) once his administrative remedies are fully exhausted under the PHRA.

## JURISDICTION AND VENUE

2.      This Court has original subject matter jurisdiction over the instant action pursuant to 28 U.S.C. §§ 1331 and 1343(a)(4) because it arises under the laws of the United States and seeks redress for violations of federal law. This Court may also assert supplemental jurisdiction over Plaintiff's state law claims as they arise out of the same facts as his federal law claims.

3.      This Court may properly assert personal jurisdiction over Defendants because their contacts with this state and this judicial district are sufficient for the exercise of jurisdiction over Defendants to comply with traditional notions of fair play and substantial justice, satisfying the standard set forth by the United States Supreme Court in *Int'l Shoe Co. v. Washington*, 326 U.S. 310 (1945), and its progeny.

4.      Pursuant to 28 U.S.C. § 1392(b)(1) and (b)(2), venue is properly laid in this district because Defendants are deemed to reside where they are subjected to personal jurisdiction, rendering Defendants residents of the Western District of Pennsylvania.

5.      Plaintiff is proceeding herein (in part) under the ADA after properly exhausting all administrative remedies with respect to such claims by timely filing a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") (which was dual-filed with the Pennsylvania Human Relations Commission) and by filing the instant lawsuit within ninety (90) days of receiving a notice of dismissal and/or right to sue letter from the EEOC.

6.      Defendants, individually and/or collectively, employ fifteen (15) or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year.

## PARTIES

7.    The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

8.    Plaintiff is an adult individual, with an address as set forth in the caption.

9.    Defendant JMP Logistics, Inc. ("JMP," if referred to individually), a domestic corporation, is a transportation and logistics company, which provides outsources or third-party transportation services.

10.    Defendant Amazon Logistics, Inc. ("Amazon," if referred to individually) is a Delaware corporation engaged in the shipping and delivery industry, with delivery hubs located in several states within the United States (including Pennsylvania) and headquarters located at the above-captioned address.

11.    JMP has a fleet of commercial trucks (which are tractor trailers) and, separately, a fleet of commercial vans for third-party delivery. Amazon, a universally and well-known online retailer, utilizes third-party trucking, transportation and delivery services such as JMP for package delivery (amongst other needs). JMP in turn advertises and recruits people such as Plaintiff for work. Plaintiff was to be hired and deliver packages as an employee of JMP for and on behalf of Amazon.

12.    Although Plaintiff applied for employment through JMP, Amazon had the ability to make decisions regarding Plaintiff's employment, including whether Plaintiff was hired. Plaintiff received pre-hire background instructions from both JMP and Amazon, and upon Plaintiff's information and belief, Plaintiff was obligated to follow the policies of both JMP and Amazon. Thus, for the foregoing reasons, Defendants may be treated as a single and/or joint employer for purposes of the instant action.

13.     At all times relevant herein, Defendants acted through their agents, servants and employees, each of whom acted at all times relevant herein in the course and scope of their employment with and for Defendants.

## FACTUAL BACKGROUND

14.     The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

15.     In or about the first week of November, 2020, Plaintiff was seeking to obtain employment with JMP "to deliver Amazon packages," per JMP's job posting, job description, and discussed job offering(s).

16.     Prior to Plaintiff's job offer being rescinded/his termination, he was informed by Defendants, that he *was definitely being hired*.

17.     By November 11, 2020, Plaintiff was e-mailed content which included the following statement: "JMP Logistics, Inc. has invited you to join them to deliver Amazon packages."

18.     Plaintiff was also provided with Amazon.com logistics login information for an account directly with Amazon. On that same day, Plaintiff was assigned a password through Amazon for coordinating with and reporting to Amazon's logistics team.

19.     By November 12, 2020, Amazon directly wanted to verify Plaintiff's driver's license, and Amazon validated Plaintiff's account after verifying his credentials directly. By separate e-mail, Amazon directly confirmed Plaintiff's ability to become employed and stated that it had "approved" his "background check" for hire.

20.     By November 18, 2020, Plaintiff was being scheduled for Defendants' "2-day classroom-based training session," to take place at 179 McClaren Road, Coraopolis, PA 15108.

Plaintiff was conclusively offered employment, which he accepted, and was on the verge of commencing orientation with Defendants.

21.     Plaintiff was terminated/had his job rescinded and/or was not hired as of late November 2020 (when he was not permitted to partake in training) and by early December 2020 after many attempted follow-ups on his part for commencement and hire.

22.     Plaintiff was not hired and/or terminated due to his disabilities and/or his possession of a medical marijuana prescription/certification. Plaintiff was: point-blank discriminated against for his actual or perceived disabilities; not accommodated; and/or discriminated against for having a lawful medical marijuana certification issued by the Commonwealth of Pennsylvania.

23.     Plaintiff has, and continues to suffer from, Post-traumatic Stress Disorder ("PTSD") (with related symptoms), anxiety, night terrors, sleep disorders and other health problems. Plaintiff's conditions, at times, prevent him from engaging in some daily life activities, including but not limited to engaging in social interaction and sleeping (among other daily life activities).

24.     Plaintiff's primary problems health complications began when his wife committed suicide and died in his arms almost a half hour later. As a result, Plaintiff has attempted many types of medication and treatment.

25.     PTSD is also considered a "serious health condition" under Pennsylvania's MMA. *See* 35 P.S. § 10231.103.

26.     Despite Plaintiff's health conditions and limitations, he would have been able to fully perform the essential functions of his job well with Defendants.

27.     Plaintiff is a very transparent and honest person and, in or about early November, 2020, he relayed the general gist of his health disorders to Clyde Porterfield, Plaintiff's primary contact from JMP involved in Plaintiff's hiring.

28.     Plaintiff specifically informed Porterfield that his physician was going to provide Plaintiff with a medical marijuana certification and marijuana prescription.

29.     Plaintiff questioned Porterfield to ensure that if he pursued this form of medical treatment that it would not impact his hire with Defendants.

30.     Plaintiff was assured on multiple occasions by Porterfield that such medical treatment would not in any manner impact his hire with Defendants. Plaintiff was very transparent because he wanted nothing to prevent his hire with Defendants, as he needed gainful employment.

31.     Based upon the aforesaid assurances from Porterfield, Plaintiff proceeded with and was issued a medical marijuana medical recommendation / certification.

32.     Pursuant to 35 P.S. § 10231.403(a), Plaintiff's physician submitted the required forms to the Department of Health to complete his certification as a qualifying "patient" authorizing him to use medical marijuana for palliative care.

33.     Plaintiff was certified as a qualifying "patient" under the MMA and was issued a medical marijuana identification card, effective November 17, 2020.  *See* 35 P.S. § 10231.501.

34.     By e-mail dated November 25, 2020, Plaintiff was provided with a "QPassport" to take a "pre-employment" (urine) drug test. The QPassport is presumably just a term for a pre-paid, pre-authorized form for individuals to show up at Quest Diagnostics for drug testing.

35.     The QPassport indicated that Plaintiff was to present for a drug test anytime between November 25, 2020 through December 4, 2020 (results of which Plaintiff assumed would naturally and promptly be reported to Defendants).

36.     Plaintiff complied with the drug testing, and medical marijuana was detected in his sample.

37.     Plaintiff was later informed by Porterfield that he was not being hired by JMP or Amazon, per Amazon's policies prohibiting people from using marijuana, even if medically prescribed (per drug test results).

38.     Plaintiff contested this directly with JMP and Amazon, during which Plaintiff informed them that he was a qualified "patient" under the MMA and held a valid Pennsylvania medical marijuana identification card. Defendants refused to engage in any interactive process and Plaintiff was still terminated/not hired or considered for the role in which he was to be hired to commence work.

39.     The employment position at issue involved solely delivering packages in a **non-CDL** vehicle (such as a van). Plaintiff would have foregone the use of medical marijuana if anyone had any type of interactive dialogue with him (although it has been one of the few medications that has actually helped Plaintiff alleviate the symptoms of his disabilities).

40.     Moreover, nothing would have prohibited Plaintiff from performing his job effectively or properly just because he consumed a marijuana pill in the evening.[2] Accepting Defendants' blanketly discriminatory views or policies, they could (also unlawfully) prohibit

---

[2] *See* 35 P.S. § 10231.2103(b)(2) which prohibits any retaliation by the employer unless the employee is "under the influence of medical marijuana **in the workplace or for working while under the influence of medical marijuana**." (Emphasis added).

individuals with disabilities from working who take far more powerful or potent narcotics to treat for their respective health problems.

41.     Plaintiff believes and therefore avers that he was not hired/had his job offer revoked/terminated from employment because of his: disabilities; requests for accommodations; and/or due to his status as a qualified "patient" under the MMA, in violation of common law and 35 P.S. § 10231.2103(b)(1).[3]

**Count I**
**Violations of the Americans with Disabilities Act, as amended ("ADA")**
**([1] Actual/Perceived/Record of Disability Discrimination;**
**[2] Retaliation; and [3] Failure to Accommodate)**

42.     The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

43.     Plaintiff not hired/had his job offer revoked/terminated from his employment with Defendants because of: [1] his actual and/or perceived disabilities; [2] his record of impairment; [3] his requested accommodations, which constitutes unlawful retaliation; and/or [4] Defendants' refusal to accommodate Plaintiff.

44.     Plaintiff was denied reasonable accommodations by Defendants which he required as a result of his disabilities

45.     After being notified about Plaintiff's disabilities, Defendants also failed to engage in any interactive process with Plaintiff to determine whether or not there were any accommodations Plaintiff could be provided with.

46.     These actions as aforesaid constitute violations of the ADA.

---

[3] Pursuant to 35 P.S. § 10231.2103(b)(1), "No employer may discharge, threaten, refuse to hire or otherwise discriminate or retaliate against an employee . . . solely on the basis of such employee's status as an individual who is certified to use medical marijuana."

**Count II**
**Violations of the Pennsylvania Medical Marijuana Act ("MMA")**
**35 P.S. §§ 10231.101, *et seq.***

47.     The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

48.     Plaintiff has and continues to suffer from "serious medical condition[s]" within the meaning of 35 P.S. § 10231.103.

49.     Plaintiff is a qualifying "patient" within the meaning of 35 P.S. § 10231.103.

50.     Defendants are each an "employer" within the meaning of 35 P.S. § 10231.2103(b).

51.     On or about November 11, 2020, Plaintiff was offered employment (which he accepted) delivering Amazon packages, pending a routine pre-employment urine drug test.

52.     Shortly after undergoing a pre-employment urine drug test in or about November of 2020, Defendants informed Plaintiff that it was rescinding its job offer because he had tested positive for marijuana.

53.     Pursuant to 35 P.S. § 10231.2103(b)(1), "No employer may discharge, threaten, refuse to hire or otherwise discriminate or retaliate against an employee . . . solely on the basis of such employee's status as an individual who is certified to use medical marijuana."[4]

---

[4] Several courts have found an **implied** private right of action for violations of a state medical marijuana act that does not explicitly provide for a private right of action where the plaintiff is a qualifying patient under the act, there is no indication of legislative intent to deny a private cause of action, and the private cause of action is not inconsistent with the underlying legislative purposes of the act. *See Palmiter v. Commonwealth Health Sys., Inc.*, No. 19 CV 1315, 2019 WL 7372712, at *10-15 (Pa. Ct. Com. Pl. Nov. 22, 2019); *Noffsinger v. SSC Niantic Operating Co.*, 273 F. Supp. 3d 326, 340-41 (D. Conn. 2017) (holding legislature intended a private cause of action under Connecticut's Palliative Use of Marijuana Act); *Whitmire v. Wal-Mart Stores Inc.*, 359 F. Supp. 3d 761, 781-82 (D. Ariz. 2019) (following *Noffsinger* to hold there is an implied private cause of action for violations of the Arizona Medical Marijuana Act); *Chance v. Kraft Heiz Foods Co.*, 2018 Del. Super. LEXIS 1773, *9-18 (Del. Super. Ct. 2018) (same regarding Delaware's Medical Marijuana Act); *Callaghan v. Fabrics Corp.*, 2017 WL 2321181, at *4-8 (R.I. Super. Ct. 2017) (same regarding Rhode Island's medical marijuana statute).

54.     Recently, the Eastern District of Pennsylvania issued a decision in which it predicted that, "the Pennsylvania Supreme Court would find that the General Assembly 'intended to create, . . . by implication, a private cause of action' for Section 2103(b)(1) [of the MMA]." *Hudnell v. Thomas Jefferson Univ. Hosps., Inc.*, No. 20-01621, 2020 U.S. Dist. LEXIS 176198, at *15 (E.D. Pa. Sep. 25, 2020).

55.     By refusing to hire Plaintiff in available positions/terminating him because he is a qualified "patient" under the MMA, Defendants have violated the law pursuant to 35 P.S. § 10231.2103(b)(1).

### Count III
### Common-Law Failure to Hire/Wrongful Termination
### (Public Policy Violation)

56.     The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

57.     The passage of the Pennsylvania Medical Marijuana Act ("MMA"), 35 P.S. §§10231.101, *et seq.,* made clear that the public policy of the State of Pennsylvania is to provide employment and hiring protections for citizens of the state who qualify for the medical use of marijuana and register as qualifying patients with the Department of Health.

58.     In providing protections from discriminatory hiring decisions based on the medical use of marijuana, the legislature made clear that the public policy of the state was to ensure that qualified patients were not denied employment opportunities based on their lawful use of medical marijuana for palliative purposes.[5]

---

[5] Pennsylvania courts have recognized the existence of a public policy violation in those instances in which the employee is terminated after he engages in conduct which he is privileged by law to do.  *See, e.g.*, *Hodson v. Alpine Manor, Inc.*, 512 F. Supp. 2d 373, 395 (W.D. Pa. 2007) ("[A] recognized facet of public policy may be violated by terminating an employee in retribution for exercising a right protected by a Pennsylvania statute, which, by its plain language, fosters a state public policy.") (citation omitted); *Reitz v. Persing*, 831 F. Supp. 410, 415 (M.D. Pa. 1993) (public policy implicated where termination compromised the employee's First Amendment rights and Pennsylvania constitutional rights to free communication of thoughts); *Rettinger v. American Can Co.*, 574 F. Supp. 306, 311

59.     Defendants rescinded the job offer they had previously made to the Plaintiff because of his lawful use of medical marijuana and a pre-employment drug test showing such use.

60.     Defendants' failure to hire Plaintiff in this regard was in violation of public policy. *See Hamovitz v. Santa Barbara Applied Research, Inc.*, No. 2: 07-cv-0454, 2010 U.S. Dist. LEXIS 110937, at *19 (W.D. Pa. Oct. 19, 2010) ("[T]he Court finds and rules that the Pennsylvania Supreme Court would recognize a refusal to hire claim in violation of public policy….").

61.     In the alternative, Defendants' rescinding of Plaintiff's job offer constituted a termination from employment, as Plaintiff had already accepted the offer, as set forth in ¶ 20, *supra.* Defendants' termination of Plaintiff, for engaging in actions he was lawfully permitted to do, violated public policy. *See Palmiter v. Commonwealth Health Sys., Inc.*, No. 19 CV 1315, 2019 WL 7372712, (Lackawanna C.P. Nov. 22, 2019) ("[The plaintiff] has alleged that [the defendants] terminated her employment on January 29, 2019, on the singular ground that she was a certified medical marijuana user. Such a discharge 'implicates a clear mandate of public policy' as declared by the General Assembly in the unambiguous language of 35 P.S. § 10231.2103(b)(1).").

62.     These actions as aforesaid constitute violations of the public policy of Pennsylvania.

**WHEREFORE**, Plaintiff prays that this Court enter an Order providing that:

A.     Defendants are to promulgate and adhere to a policy prohibiting discrimination and retaliation in the future against any employee(s);

---

(M.D. Pa. 1983) (employment terminated in retaliation for filing workers' compensation claim); *Shick v. Shirey*, 552 Pa. 590, 716 A.2d 1231 (Pa. 1998) (for filing a claim for unemployment benefits).

B.      Defendants are to compensate Plaintiff, reimburse Plaintiff, and make Plaintiff whole for any and all pay and benefits Plaintiff would have received had it not been for Defendants' illegal actions, including but not limited to back pay, front pay, salary, pay increases, bonuses, insurance, benefits, training, promotions, reinstatement and seniority;

C.      Plaintiff is to be awarded punitive damages as permitted by applicable law, in an amount believed by the Court or trier of fact to be appropriate to punish Defendants for their willful, deliberate, malicious and outrageous conduct and to deter Defendants or other employers from engaging in such misconduct in the future;

D.      Plaintiff is to be accorded other equitable and legal relief as the Court deems just, proper and appropriate (including but not limited to damages for emotional distress, pain, suffering and humiliation);

E.      Plaintiff is to be awarded the costs and expenses of this action and reasonable attorneys' fees as provided by applicable federal and state law; and

F.      Any verdict in favor of Plaintiff is to be molded by the Court to maximize the financial recovery available to Plaintiff in light of the caps on certain damages set forth in applicable federal law; and

G.      Plaintiff's claims are to receive a trial by jury to the extent allowed by applicable law.  Plaintiff has also endorsed this demand on the caption of this Complaint in accordance with Federal Rule of Civil Procedure 38(b).

Respectfully submitted,

**KARPF, KARPF & CERUTTI, P.C.**

Ari R. Karpf, Esquire
3331 Street Road
Two Greenwood Square, Suite 128
Bensalem, PA 19020
(215) 639-0801
*Attorneys for Plaintiff*

Date:  March 11, 2021